UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ANTONIO L. BUCKMAN,

                    Petitioner,

v.                                    Case No. 3:10-cv-486-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

    Petitioner Antonio L. Buckman initiated this action by filing

a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1)

under 28 U.S.C. § 2254 and Memorandum of Law in Support of Petition

(Memorandum; Doc. 2) on June 4, 2010. In the Petition, Buckman

challenges a 2003 state court (Duval County, Florida) judgment of

conviction for armed robbery, aggravated battery, and possession of

cocaine. Respondents have submitted a memorandum in opposition to

the Petition. See Respondents' Answer in Response to Order to Show

Cause and Petition for Writ of Habeas Corpus (Response; Doc. 42)

with exhibits (Resp. Ex.). On December 21, 2010, the Court entered

an Order to Show Cause and Notice to Petitioner (Doc. 7),

admonishing Buckman regarding his obligations and giving Buckman a

time frame in which to submit a reply. Buckman submitted a brief in

reply on December 8, 2015. See Petitioner's Reply to the

Respondents' Answer to Petitioner's Writ of Habeas Corpus (Reply; Doc. 47).[1] This case is ripe for review.

## II. Procedural History

On August 30, 2002, the State of Florida charged Buckman with armed robbery (count one), possession of cocaine (count two), aggravated battery (count three), and possession of a firearm by a juvenile delinquent found to have committed a felony act (count four). Resp. Ex. A at 17–18, Amended Information. The trial court severed the charge relating to the possession of a firearm. See id. at 38, 39. Buckman proceeded to a jury trial on the remaining charges in April 2003, see Resp. Exs. C; D; E, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on April 30, 2003, the jury found him guilty, as charged, see Resp. Ex. A at 123-25, Verdicts; Tr. at 469-70. On June 23, 2003, the trial court sentenced Buckman, as a habitual violent felony offender, to a term of imprisonment of thirty years for count one; a term of imprisonment of five years for count two, with such term to run

_____

[1] On July 30, 2013, the Court dismissed the Petition as untimely filed and determined that Buckman had not met the burden of showing that equitable toling was warranted. See Order (Doc. 20). Upon Buckman's appeal, the Eleventh Circuit Court of Appeals remanded the case to this Court for the limited purpose of issuing final merits rulings on Buckman's Motion to Reinstate (Doc. 22) and Motion for Reconsideration (Doc. 29). See Eleventh Circuit's Order (Doc. 34), filed August 7, 2014. On May 15, 2015, the Court granted Buckman's Motion to Reinstate (Doc. 22), vacated the Order dismissing the Petition as untimely, and reopened the case for the Court to reconsider its resolution of the Petition. See Order (Doc. 38).

concurrently with the sentences imposed for counts one and three; and a term of imprisonment of fifteen years for count three, with such term to run concurrently with the sentences imposed for counts one and two. See Resp. Exs. A at 140-47; A at 189-200, B at 201-36, Transcripts of the Sentencing (Sentencing Tr.). The State dismissed count four. See Sentencing Tr. at 235.

On direct appeal, Buckman, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it allowed Officer Furman to testify that she had been shot previously (ground one), and that the prosecutor made improper and prejudicial remarks during closing argument (ground two). See Resp. Ex. F. The State filed an Answer Brief, see Resp. Ex. G, and Buckman filed a Reply Brief, see Resp. Ex. H. On March 24, 2004, the appellate court affirmed Buckman's conviction and sentence per curiam without issuing a written opinion, see Buckman v. State, 871 So.2d 206 (Fla. 1st DCA 2004); Resp. Ex. I, and the mandate issued on April 12, 2004, see Resp. Ex. J.

Buckman filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) on August 16, 2004.[2] See Doc. 15-1, Petitioner's Exhibit A.

_____

[2] Respondents acknowledge that Buckman filed his initial Rule 3.850 motion on August 16, 2004. See Supplemental Response (Doc. 19) at 8 ("Here, the document provided by Petitioner evidences that he did, in fact, provide it to Appalachee Correctional Institution on August 16, 2004, as the stamp states, 'Provided to A.C.I. on 8-16-04 for mailing' with Petitioner's name and prisoner ID number. Respondent acknowledges that demonstrates sufficient compliance

In his request for post-conviction relief, Buckman asserted that counsel (Amy Grass-Gilmore and Alphonse Bernard Perkins) were ineffective because they: failed to object to inadmissible evidence (ground two); failed to present an alibi witness at trial (ground four); coerced him not to testify (ground five); and manipulated him with unfulfilled promises (ground six). Additionally, he argued that the trial court illegally enhanced his sentence (ground one), and the police failed to read him his <u>Miranda</u>[3] rights (ground three). Buckman made similar assertions in a December 18, 2005 Rule 3.850 motion. <u>See</u> Resp. Ex. K at 1-34. The court denied his request for post-conviction relief on November 20, 2008. <u>See</u> Resp. Ex. L at 179-99. The appellate court dismissed Buckman's appeal on January 23, 2009, <u>see</u> Resp. Ex. M, and later denied his motions for rehearing and to reinstate the case, <u>see</u> Resp. Ex. N.

Buckman also filed an amended Rule 3.850 motion on September 11, 2008.[4] <u>See</u> Resp. Ex. K at 39-106. In this request for post-conviction relief, he asserted that counsel (Amy Grass-Gilmore and Alphonse Bernard Perkins) were ineffective because they: persuaded him not to testify (ground one); manipulated him not to call Travis Floyd as an alibi witness (ground two); misled him to plead not

---

with Florida's legal mail procedures and constituted filing of the motion under Florida law.").

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[4] The circuit court was not aware of the amended Rule 3.850 motion until after its ruling on the previously-filed request for post-conviction relief. <u>See</u> Resp. Ex. L at 210.

guilty (ground three); made unfulfilled promises (ground four); misled him to reject the State's plea offer (ground five); and failed to object to the admissibility of the State's evidence on chain of custody grounds (ground seven). Additionally, Buckman asserted that the trial court illegally enhanced his sentence (ground six). The court denied the amended Rule 3.850 motion on February 4, 2009. <u>See</u> Resp. Ex. L at 210-13. On May 28, 2009, the appellate court affirmed the trial court's denial of post-conviction relief per curiam. <u>See</u> <u>Buckman v. State</u>, 10 So.3d 634 (Fla. 1st DCA 2009); Resp. Ex. O. Buckman filed a pro se motion for rehearing on June 10, 2009, pursuant to the mailbox rule. <u>See</u> Resp. Ex. Q. The mandate issued on June 23, 2009, <u>see</u> Resp. Ex. P, and the court denied Buckman's motion for rehearing on August 4, 2009, <u>see</u> Resp. Ex. R.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d). <u>See</u> Orders (Doc. 44, 38); Motion to Withdraw Respondents' Motion to Dismiss Untimely Petition for Writ of Habeas Corpus (Doc. 41).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a

federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Buckman's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)

(quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's

7

decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence."

> See <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.
> Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u>
> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S.
> Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).
> Whatever that "precise relationship" may be,
> "'a state-court factual determination is not
> unreasonable merely because the federal habeas
> court would have reached a different
> conclusion in the first instance.'"[5] <u>Titlow</u>,
> 571 U.S. at ---, 134 S. Ct. at 15 (quoting
> <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct.
> 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>.

<u>denied</u>, 137 S.Ct. 2298 (2017). Also, deferential review under §

2254(d) generally is limited to the record that was before the

state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v.

Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in §

2254(d)(1)'s "requires an examination of the state-court decision

at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas

relief for prisoners whose claims have been adjudicated in state

court." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013). "Federal courts

may grant habeas relief only when a state court blundered in a

manner so 'well understood and comprehended in existing law' and

'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338

(quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to

---

[5] The Eleventh Circuit has described the interaction between
§ 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y
Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>,
137 S.Ct. 1103 (2017).

be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that Buckman's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052.

> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id.</u>, at 687, 104
> S.Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

The United States Supreme Court has long recognized that <u>Strickland</u>'s two-part inquiry applies to ineffective assistance of counsel claims arising out of the plea process. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985).[6] In 2012, in companion decisions

---

[6] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59 (1985); <u>see</u> <u>Lynch v. Sec'y, Fla. Dep't of Corr.</u>, 776 F.3d 1209, 1218 (11th Cir. 2015) (citation omitted) (stating that, to succeed on a claim that counsel was ineffective because he advised petitioner to plead guilty, petitioner "must prove that: (1) counsel's advice was deficient; and (2) 'but for counsel's errors, he would not have pleaded guilty

in <u>Missouri v. Frye</u>, 566 U.S. 134 (2012), and <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." <u>In re Perez</u>, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). In <u>Lafler</u>, the parties agreed that counsel's performance was deficient when he advised the defendant to reject the plea offer on the grounds he could not be convicted at trial. <u>See</u> 566 U.S. at 163. Thus, the Supreme Court articulated a three-part test to prove prejudice in the context of a foregone guilty plea.

> In contrast to <u>Hill</u>, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (<u>i.e.</u>, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Id.</u> at 163-64; <u>see</u> <u>Frye</u>, 566 U.S. at 147; <u>Gissendaner v. Seaboldt</u>, 735 F.3d 1311, 1317-19 (11th Cir. 2013).

---

and would have insisted on going to trial'"), <u>cert</u>. <u>denied</u>, 136 S.Ct. 798 (2016).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Buckman asserts that counsel was ineffective because she failed to call Travis Floyd as an alibi witness at trial. See Petition at 5-12; Memorandum at 1-7. He states that Floyd would have corroborated his account as to where he got the watch. See Memorandum at 2, 10. Buckman raised the claim in his amended Rule 3.850 motion in state court. See Resp. Ex. K at 52-60. The court ultimately denied the post-conviction motion with respect to the claim. See Resp. Ex. L at 210-12.[7] The appellate court affirmed the trial court's denial of post-conviction relief per curiam, see Buckman, 10 So.3d 634; Resp. Ex. O, and later denied Buckman's motion for rehearing, see Resp. Exs. Q; R.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[8] the Court will address the

_____

[7] The court denied Buckman's December 18, 2005 Rule 3.850 motion as to the issue, stating in pertinent part:

> The final grounds [sic] for ineffective assistance concerns counsel[']s failure to call an alibi witness. Not only does the Defendant[']s own motion indicate this was a strategy decision but the transcript at trial indicates the Defendant felt this decision was in his best interest as well [Exhibit "C"].

Resp. Ex. L at 180 (citing Tr. at 353).

[8] In looking through the appellate court's affirmance to the trial court's "relevant rationale," this Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S.Ct. at 1192.

14

claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Buckman is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Buckman's claim, nevertheless, is without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsels' performance was reasonable is even stronger when, as in this case, defense counsel Ms. Amy Grass-Gilmore and Mr. Alphonse B. Perkins are experienced criminal defense attorneys.[9] The inquiry is "whether, in light of all the

_____

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000); <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999). Ms. Grass-Gilmore was admitted to the Florida Bar in 1989, and Mr. Perkins was admitted in 1990. <u>See</u> http://www.floridabar.org. At the time of Buckman's 2003 trial, Grass-Gilmore and Perkins were experienced trial lawyers.

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Buckman must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

At a <u>Faretta</u>[10] hearing, defense counsel informed the court that the defense team "talked to or tried to speak with every witness"

---

[10] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

that Buckman asserted would be helpful to the defense. Resp. Ex. A

at 176-79. Prior to trial, the following exchange occurred:

> [PROSECUTOR]: In addition to which I have
> requested as to whether or not there was going
> to be a witness presented, Mr. Floyd, so that
> I could depose him if in fact that were [sic]
> going to  happen and there would be no need to
> depose him. I just wanted to put that on the
> record so the Court is aware of it.

> [DEFENSE COUNSEL]: And that's a correct
> statement of what has happened, Judge, and we
> have run everything by Mr. Buckman and cleared
> everything with him.

> THE COURT: Okay. Are we ready for the
> jury to be brought in?

> [PROSECUTOR]: Yes, sir.

Tr. at 154. Prior to the defense resting its case, the following

colloquy ensued.

> THE COURT: And do you understand that you
> could call other witnesses in addition to
> those that you have called;[11] is that right?

> THE DEFENDANT: Yes, sir.

> THE COURT: And is it your decision that
> no other witnesses will be called in the case?

> THE DEFENDANT: Yes, sir.

> THE COURT: That's all I need to talk with
> you about. You can sit down.

> And will the defense be resting at this
> point?

> [DEFENSE COUNSEL]: We're resting.

---

[11] The defense called Officers John T. Merritt and Rebecca
Furman as witnesses. <u>See</u> Tr. at 324-48.

Tr. at 352-53.

On this record, Buckman has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Buckman has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Travis Floyd as a defense witness at trial.[12] His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Buckman is not entitled to federal habeas relief on ground one.

## B. Grounds Two, Three, and Four

As ground two, Buckman asserts that counsel was ineffective because she "misled [him] to an involuntary plea of not guilty," and misinformed him that the maximum sentence he could receive (if he proceeded to trial and a jury found him guilty of the charges) was a six-year youthful offender sentence. Petition at 13. Additionally, as to ground three, he states that counsel was ineffective because she advised him to reject the State's plea offers because the judge would sentence him to a six-year youthful offender sentence if a jury found him guilty. See id. at 18-24; Memorandum at 8-12. As ground four, he asserts that counsel was

_____

[12] See Resp. Ex. K at 54, Exhibit A, Investigator John Ruda's October 14, 2002 summary of Floyd's statement.

ineffective because she failed to fulfill her promises that she could win at trial, and if not, the court would sentence him to six years as a youthful offender. See Petition at 25; Memorandum at 13-14. He raised these claims in his amended Rule 3.850 motion in state court. See Resp. Ex. K at 61-79. The court ultimately denied the post-conviction motion with respect to the claims, stating in pertinent part:

> The Defendant also alleges that his attorney failed to convey information to him, regarding the maximum penalties he could receive if convicted. He claims he was told the maximum he could get would be a youthful offender sentence. Finally, the defendant claims he wanted to plead guilty and his attorney gave him bad advice in advising him not to plea[d] guilty to the charges. These allegations are rebutted by the Defendant's own statement and submissions. In that the record he submitted shows he wanted to plead guilty for a sentence of five (5) years which was rejected by the State. He further stated that prior to trial the State was offering ten (10) years as a habitual offender. The inconsistencies within the Defendant's own pleading refute his entitlement to relief on any of these claims. Essentially, the Defendant gambled and lost and is now regretful of his decision. That is not a basis for postconviction relief.

Resp. Ex. L at 211-12. On Buckman's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, see Buckman, 10 So.3d 634; Resp. Ex. O, and later denied Buckman's motion for rehearing, see Resp. Exs. Q; R.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[13] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Buckman is not entitled to relief on the basis of these claims.

Moreover, even assuming the state appellate court's adjudication of the claims is not entitled to deference, Buckman's claims are still without merit. The State initially offered Buckman "four years plus two" to enter a guilty plea. <u>See</u> Petition at 14, 15; Sentencing Tr. at 227. Instead of accepting the State's offer, Buckman asked for "three years plus three." Sentencing Tr. at 227. Prior to trial, the State offered Buckman "10 years instead of going to trial" on the three counts. <u>See</u> Petition at 14. Notably, Buckman filed pro se pretrial motions to dismiss counsel. <u>See</u> Resp. Ex. A at 28-33. In the motions, he expressed dissatisfaction with

---

[13] This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. <u>Wilson</u>, 138 S.Ct. at 1192.

defense counsel because he wanted to enter a plea of guilty to the possession of cocaine charge (count two), and she failed to execute his request. <u>See</u> <u>id.</u> During a pretrial <u>Nelson</u>[14] hearing, the following colloquy ensued.

> [BUCKMAN]: I had asked her, I asked [the] State could I plead out to the possession charge which she said she did, but she ain't said nothing about it. And so I told her to put [a] motion to dismiss my case, she ain't did nothing.
>
> THE COURT: Is that it?
>
> [BUCKMAN]: She ain't helped me.
>
> THE COURT: All right. Miss Grass-Gilmore, do you want to respond to that?
>
> [DEFENSE COUNSEL]: Your Honor, at this time I don't think [a] motion to dismiss would be -- I don't think there is a proper foundation for me to file that at this time, that's why I haven't filed one.
>
> As to my client's desire to enter a plea of guilty to possession of cocaine, I did speak with Mr. Mantei and let him know that my client wants to do that. And I checked with my client at the jail about that, he still wanted to do that, and sent an e-mail to Mr. Mantei. I think, you know, I believe my client can do that, I don't think that I've done anything that would prohibit him from still doing that. I'm assuming he just wants to do that some time before trial. I just am trying to get a handle from the State if we could work out everything or what their offer would be to plea to possession of cocaine, and I think our conversations in that regard are still open, I don't think that's been closed off at all. Perhaps my client can do that this morning.

---

[14] <u>Nelson v. State</u>, 274 So.2d 256 (Fla. 4th DCA 1973).

[PROSECUTOR]: Judge, it is a hundred percent true Miss Grass-Gilmore did convey the defendant's wish to plead to [the] possession charge, and my understanding of it was that he wanted to plead to [the] possession charge, and have the armed robbery, aggravated battery, both with firearms and possession of firearm by adjudicated juvenile either dismissed or nol prossed or whatever.[15] That offer was categorically rejected. If this defendant wishes to nonetheless knowing those other charges are still going to remain, plead to the possession charge, obviously there is no one in this courtroom that could stop him from attempting to do so, he's free to do so. But as far as negotiation for just plead[ing] to possession that was completely rejected, it will continue to be so.

Yes, it is true I have talked with Miss Grass-Gilmore and continue to about possible other resolutions, but I would further point out that the State tendered other offers to this defendant prior to the filing of the 10/20 life language and amending the information which this defendant rejected and that is the reason he faces 20 years minimum on these charges.

THE COURT: All right. Mr. Buckman, does that answer whatever questions you have?

[BUCKMAN]: (Nods.)

[DEFENSE COUNSEL]: Your Honor, just so I can put these dates on the record. On February 6, when I learned my client wanted to offer on the possession charge, I for the first time sp[o]ke with Mr. Mantei about that. I have another a [sic] note in my file that I e-mailed Mr. Mantei on March 14th, "Can we work this out with plea on possession?" And again, this is just I think on-going negotiation.

. . . .

---

[15] See Resp. Ex. A at 34, 35.

> THE COURT: So you still want to plead
> guilty to possession of cocaine charge knowing
> that the other cases are going to go to trial
> anyway? It's not going to resolve these other
> charges.
>
> [BUCKMAN]: I'm all right.

Resp. Ex. A at 163-66. Notably, at a <u>Faretta</u> hearing one month

before trial, Buckman acknowledged that he understood armed robbery

with a firearm (count one) is a first degree felony punishable by

life imprisonment. <u>See</u> <u>id.</u> at 168. At sentencing, defense counsel

provided a general chronology of the plea offers and counteroffers,

and argued it was within the court's discretion to sentence Buckman

as a youthful offender.[16]

---

[16] Florida Statutes section 958.04(1) provides that the court
may sentence as a youthful offender any person:

> (a) Who is at least 18 years of age or who has been
> transferred for prosecution to the criminal division of
> the circuit court pursuant to chapter 985;
>
> (b) Who is found guilty of or who has tendered, and the
> court has accepted, a plea of nolo contendere or guilty
> to a crime that is, under the laws of this state, a
> felony if the offender is younger than 21 years of age at
> the time sentence is imposed; and
>
> (c) Who has not previously been classified as a youthful
> offender under the provisions of this act; however, a
> person who has been found guilty of a capital or life
> felony may not be sentenced as a youthful offender under
> this act.

Notably, "[a] life felony is not the same as a first-degree felony
punishable by life." <u>James v. State</u>, 775 So.2d 347, 348 (Fla. 1st
DCA 2000) (per curiam) (citing <u>Burdick v. State</u>, 594 So.2d 267,
268-69 (Fla. 1992)). The offense of which Buckman was convicted,
armed robbery, was a first degree felony punishable by life
imprisonment. <u>See</u> <u>Black v. State</u>, 52 So.3d 830 (Fla. 4th DCA 2011)

A week before this case went to trial, the State would have settled this case for ten years. I'm not sure why going to trial makes this incident worth life in prison, and I would submit to you that a youthful offender sentence is what's appropriate in this case. Going to trial doesn't change what the facts are worth in this case, and if the State felt they were worth ten years the week before trial, they're not worth life now.

Mr. Buckman at one point, when the State was asking for four years plus two, had offered three years plus three. **When the State was asking for ten years mandatory, Mr. Buckman offered seven years.**

The State received a letter from my client in April, on April -- I received a letter from the State that my client had written to the State. I received it April 22nd where my client was asking the State "Could we plead out to five years?"[17]

. . . .

Your Honor, based on all that, we feel that a youthful offender sentence would be appropriate in this case, and we'd ask that Mr. Buckman be sentenced accordingly.

--------

("Armed robbery and armed burglary are first-degree felonies punishable by life, not life felonies.") (citing Fla. Stat. §§ 810.02(2)(b), 812.13(2)(a)); Lee v. State, 399 So.2d 1027, 1028 (Fla. 1st DCA 1981) (per curiam) (stating armed robbery is a "felony of the first degree," not a "life felony," and therefore, the trial judge incorrectly found that defendant's conviction for armed robbery precluded his treatment as a youthful offender) (internal quotations omitted), pet. for rev. denied, 407 So.2d 1106 (Fla. 1981); see also Resp. Ex. A at 17, Amended Information; 140, Judgment (stating armed robbery, the first count, is a first degree felony punishable by life). Thus, Buckman was eligible for a youthful offender sentence.

[17] See Resp. Ex. A at 35, Buckman's letter; see also Tr. at 167, 170-71.

Sentencing Tr. at 226-28 (emphasis added). Notably, the State acknowledged that Buckman "technically" qualified, but recommended that the court not consider him for a youthful offender sentence. See id. at 224. Thus, it was not unreasonable for defense counsel to believe that Buckman could receive a more lenient sentence, one that was less than the State's ten-year plea offer that was conveyed a week before trial. Instead of accepting the State's ten-year plea offer, Buckman chose to offer seven years. On this record, Buckman has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Accordingly, Buckman is not entitled to federal habeas relief on grounds two, three, and four.

## C. Ground Five

As ground five, Buckman asserts that counsel were ineffective because they "provided misleading advice" that influenced him not to testify at trial. Petition at 34; Memorandum at 15-19. He raised the claim in his amended Rule 3.850 motion in state court. See Resp. Ex. K at 45-51. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In his motion, the Defendant alleges ineffective assistance of counsel because his attorney improperly advised him not to testify and advised him that his prior convictions could be used to impeach him. On its face[,] this alleged advice is legally correct, and within the parameters of trial counsel's responsibility.

25

Resp. Ex. L at 211. On Buckman's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. O, and later denied Buckman's motion for rehearing, <u>see</u> Resp. Exs. Q; R.

Insofar as the state appellate court affirmed the trial court's denial on the merits,[18] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Buckman is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Buckman's claim, nevertheless, is without merit. Prior to the defense resting its case, counsel discussed the right to testify with Buckman. <u>See</u> Petition at 34; Tr. at 348. Thereafter, the following colloquy ensued.

> THE COURT: Have you decided at this point whether the defendant will be testifying?

---

[18] <u>See</u> <u>Wilson</u>, 138 S.Ct. at 1192.

[DEFENSE COUNSEL]: Yes, sir, Your Honor, he will not be testifying.

. . . .

THE COURT: Mr. Buckman, step up here, please.

Mr. Buckman, do you understand in this case as the defendant you do have the absolute right to testify?

THE DEFENDANT: Yes, sir.

THE COURT: And you have the equally absolute right not to testify. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And that no one can make that decision for you but you and you alone, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Your attorneys can advise you and counsel you, as they should, but only you can decide whether or not you testify in this case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied that it is your decision, and yours alone, not to testify in this case?

THE DEFENDANT: Yes, sir.

Tr. at 348, 352-53.

On this record, Buckman has failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Buckman has not shown any

resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had not advised him in the manner he suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Buckman is not entitled to federal habeas relief on ground five.

### D. Ground Six

As ground six, Buckman asserts that counsel was ineffective because she failed to object to the admissibility of the State's evidence (the watch) on chain of custody grounds. <u>See</u> Petition at 40-45; Memorandum at 20-25. He raised the claim in his amended Rule 3.850 motion in state court. <u>See</u> Resp. Ex. K at 91-103. The court ultimately denied the post-conviction motion with respect to the claim. <u>See</u> Resp. Ex. L at 210-12.[19] On Buckman's appeal, the court affirmed the trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. O, and later denied Buckman's motion for rehearing, <u>see</u> Resp. Exs. Q; R.

---

[19] The court denied Buckman's December 18, 2005 Rule 3.850 motion as to the issue, stating:

> In the Defendant's Motion, the Defendant claims that counsel rendered ineffective assistance in that counsel failed to object to admission of a watch as evidence. The Court has reviewed the transcript of the trial which specifically shows that there was no legal basis upon which to object and which rebuts the Defendant[']s allegations. [Exhibit "A"]

Resp. Ex. L at 180 (citing Tr. at 309-12).

To the extent that the state appellate court affirmed the trial court's denial on the merits,[20] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Buckman is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Buckman's claim, nevertheless, is without merit. <u>See</u> Tr. at 181, 254, 309-12. On this record, Buckman has failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Buckman has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the admission of the watch. His ineffectiveness claim is without merit since he has shown neither

---

[20] <u>See</u> <u>Wilson</u>, 138 S.Ct. at 1192.

deficient performance nor resulting prejudice. Accordingly, Buckman is not entitled to federal habeas relief on ground six.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Buckman seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Buckman "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.  The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.  If Buckman appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.  The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of July, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

sc 6/29
c:
Antonio L. Buckman
Ass't Attorney General